UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF AMERICA, N.A., | Case No. 2:16-CV-447 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| COPPER CREEK ESTATES HOMEOWNERS ASSOCIATION, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff Bank of America, N.A.'s ("BANA") motion for summary judgment. (ECF No. 47). Defendant/cross defendant Copper Creek Estates Homeowners Association ("Copper Creek") filed a response (ECF No. 49), to which BANA replied (ECF No. 54). Defendants Premier One Holdings, Inc. ("Premier") and Weisun Property, Inc. ("Weisun") also filed a response (ECF No. 50), to which BANA replied (ECF No. 55).

Also before the court is BANA's motion to file supplemental authorities in support of its motion for summary judgment. (ECF No. 53). Defendants have not filed a response and the time to do so has passed.

**I.    Facts**

This action arises from a dispute over real property located at 6700 Prairie Dusk Drive, Las Vegas, Nevada 89122 ("the property"). (ECF No. 1).

Dawn Garrett purchased the property on June 30, 2010. (ECF No. 47-1). Garrett financed the purchase with a loan in the amount of $168,992.00 from HomeAmerican Mortgage corporation ("HomeAmerican"). (ECF Nos. 47-1, 47-2). HomeAmerican secured the loan with a deed of trust, which names HomeAmerican as the lender, Ticor Title of Nevada as the trustee,

and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary as nominee for the lender and lender's successors and assigns. (ECF No. 47-1). On June 7, 2011, BAC Home Loan Servicing, LP ("BAC") acquired all beneficial interest in the deed of trust via an assignment, which BAC recorded with the Clark County recorder's office. (ECF No. 47-2). On July 1, 2011, BAC merged into BANA. (ECF No. 47-20).

On June 24, 2011, Copper Creek, through its agent defendant Nevada Association Services, Inc. ("NAS"), recorded a notice of delinquent assessment lien ("the lien") against the property for Garrett's failure to pay Copper Creek in the amount of $1,134.70. (ECF No. 47-3). On August 24, 2011, Copper Creek recorded a notice of default and election to sell pursuant to the lien, stating that the amount due was $2,339.50 as of August 19, 2011. (ECF No. 47-4).

In an attempt to exercise its right of redemption, BANA requested from Copper Creek the superpriority amount of the lien. (ECF No. 47-7). Copper Creek did not reply to BANA's request. BANA, thereby, used a payoff ledger for a different property in the same development to calculate the superpriority amount as $630.00, the sum of nine months of assessments. (ECF No. 47). On March 15, 2012, BANA sent a letter and a check in that amount to Copper Creek. *Id*. The letter explained that the check was the sum of nine months of common assessments and intended to pay off the superpriority portion of the lien. *Id*. Copper Creek rejected the check without explanation. *See id*.

On July 16, 2013, Copper Creek recorded a notice of foreclosure sale against the property. (ECF No. 47-6). On September 13, 2013, Copper Creek sold the property in a nonjudicial foreclosure sale to Premier in exchange for $11,000.00. (ECF No 47-8). On September 24, 2013, Premier recorded the deed of foreclosure with the Clark County recorder's office. *Id*. On October 10, 2014, Weisun acquired the property via short form deed, which it recorded with the Clark County recorder's office. (ECF No. 47-14).

On May 2, 2016, BANA filed a complaint, alleging three causes of action: (1) quiet title/declaratory relief against all defendants; (2) breach of NRS 116.1113 against Copper Creek and NAS; and (3) wrongful foreclosure against Copper Creek and NAS. (ECF No. 43).

**James C. Mahan**
**U.S. District Judge**

Now, BANA moves for summary judgment, requesting that the court hold that the foreclosure sale did not extinguish the deed of trust. (ECF No. 47).

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

James C. Mahan
U.S. District Judge

- 3 -

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

As a preliminary matter, the court will grant BANA's motion to file supplemental authorities (ECF No. 53) pursuant to Local Rule 7-2(g) as the materials therein include new authority on the application of NRS 116.3116 *et seq*. ("Chapter 116").

BANA moves for summary judgment, requesting the court to declare that the deed of trust still encumbers the property. (ECF No. 47). Because BANA has provided sufficient grounds to set aside the foreclosure sale, the court will grant BANA's motion for summary judgment.

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title

James C. Mahan
U.S. District Judge

- 4 -

does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, a party must show that its claim to the property is superior to all others in order to succeed on a quiet title action. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Chapter 116[1] allows an HOA to place a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Under NRS 116.3116(2), HOA liens have priority over other encumbrances. Nev. Rev. Stat. § 116.3116(2). However, some encumbrances are not subject to an HOA lien's priority, including "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

Chapter 116 then provides an exception to the subparagraph (2)(b) exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Under Chapter 116, an HOA can enforce its superpriority lien with a nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev.

---

[1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

NRS 116.31166(1) provides that when an HOA forecloses on a property pursuant to NRS 116.31164, the following recitals in the deed are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2] "The 'conclusive' recitals concern . . . all statutory prerequisites to a valid HOA lien foreclosure sale." *See Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"). Nevertheless, courts retain the equitable authority to consider quiet title actions even when an HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the parties have provided the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of foreclosure sale, and the recorded trustee's deed upon sale. *See* (ECF Nos. 47-3, 47-4, 47-6, 47-8). Further, the recorded foreclosure deed contains the necessary recitals to establish compliance with NRS 116.31162 through NRS 116.31164. (ECF No. 47-8); *see Shadow Wood*, 366 P.3d at 1112. Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale was valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

While NRS 116.3116 accords certain deed recitals conclusive effect, it does not conclusively entitle the buyer at the HOA foreclosure sale to success on a quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting that NRS 116.31166 defeats, as a matter of law,

---

[2] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.
>
> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

actions to quiet title). Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id*.

BANA argues that, in light of the Nevada Supreme Court's recent holding in *Bank of America, N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 121 (Nev. 2018) (*Bank of America*), BANA tendered the superpriority portion of the lien and prevented the foreclosure sale from extinguishing the deed of trust. (ECF No. 47). The court agrees.

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, BOA could have paid off the SHHOA lien to avert loss of its security . . ."). The superpriority portion of the lien consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411; *Horizons at Seven Hills Homeowners Association v. Ikon Holdings, LLC*, 373 P.3d 66 (Nev. 2016).

In *Bank of America*, the Nevada Supreme Court held that a foreclosure sale did not extinguish a first deed of trust when Bank of America, the holder of the deed of trust, used the HOA's representations to calculate and tender the sum of nine months of delinquent assessments. *Bank of America*, 427 P.3d at 121. Although the superpriority portion of an HOA lien typically includes maintenance and nuisance abatement charges, the court held that "Bank of America tendered the correct amount to satisfy the superpriority portion of the lien . . . [because] the HOA did not indicate that the property had any charges for maintenance or nuisance abatement." *Id*. at 118.

As in *Bank of America*, Copper Creek has not indicated that the property had any charges for maintenance or nuisance abatement. *See Bank of America*, 427 P.3d at 118. Thus, when BANA sent a check for nine months of assessments to Copper Creek, it properly tendered the

superpriority portion of the lien. *See* (ECF No. 59-7). Indeed, it makes no difference that BANA relied on a ledger from a different property subject to the same HOA common assessments to calculate the amount of the superpriority portion of the lien, as BANA tendered an amount that undisputedly represented nine months of assessments. *See Bank of America*, 427 P.3d at 118; s*ee also Tyrone & In-Ching, LLC v. U.S. Bank, N.A.*, 430 P.3d 533 (Nev. 2018); *see also NV Eagles, LLC v. Christiana Trust*, 429 P.3d 1254 (Nev. 2018).

Therefore, the nonjudicial foreclosure sale did not extinguish the deed of trust. *See Bank of America*, 427 P.3d at 121 ("It follows that after a valid tender of the superpriority portion of an HOA lien, a foreclosure sale . . . cannot extinguish the first deed of trust").

### IV. Conclusion

In light of the foregoing, BANA has provided sufficient grounds for the court to set aside the foreclosure sale. As the court has resolved all pertinent issues in this litigation, the court will enter judgment and close the case.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that BANA's motion for summary judgment (ECF No. 47) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that BANA's motion to file supplemental authorities (ECF No. 53) be, and the same hereby is, GRANTED.

The clerk shall enter judgment accordingly and close the case.

DATED January 15, 2019.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 8 -